**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE VERIZON EMPLOYEE BENEFITS COMMITTEE, | |
| Plaintiff, | Civil Action No. 18-14251 (MAS) (TJB) |
| v. | **MEMORANDUM OPINION** |
| LISA BALDINO, *et al.*, | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff The Verizon Employee Benefits Committee's ("Plaintiff") Motion for Default Judgment against Defendant Lisa J. Baldino ("Defendant"). (ECF No. 13.) The Court has carefully considered Plaintiff's submissions and decides this matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion for Default Judgment is granted.

## I.   BACKGROUND[1]

Plaintiff, as administrator and fiduciary for the Verizon Pension Plan for Mid-Atlantic Associates (the "Plan"), brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA") "to recoup an overpayment of pension benefits [the Plan] made . . . as the result of either administrative error or the fraudulent conduct of [Defendant]." (Compl. 1, ECF No. 1.)

---

[1] When considering a motion for default judgment, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quotation omitted).

The Plan "is an ERISA-covered pension plan within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A)." (*Id.* ¶ 1.) The day-to-day administration of the Plan occurs "within the human resources department of Verizon Communications, Inc. ("Verizon") located in Basking Ridge, New Jersey." (*Id.*)

Defendant is the granddaughter of Rosie Cruze, a former employee of Verizon and participant in the Plan. (*Id.* ¶¶ 2–3, 7.) Cruze retired "from her employment with Verizon and/or its predecessors" in or around 1989. (*Id.* ¶ 8.) Cruze subsequently received monthly pension payments of $838.56 from the Plan. (*Id.*) On or about October 30, 2007, the New Jersey Middlesex County Surrogates Court issued Letters of Guardianship ("Letters of Guardianship") naming Defendant the guardian of Cruze. (*Id.* ¶ 9.)

On or about December 16, 2009, Defendant submitted a copy of the Letters of Guardianship to Verizon who acknowledged its receipt and approval by correspondence dated February 11, 2010 (the "February 11, 2010 Correspondence"). (*Id.* ¶ 10; *see also* Feb. 11, 2020 Correspondence, Ex. B to Compl., ECF No. 1-2.) The February 11, 2010 Correspondence advised Defendant that "[t]his guardianship permits you to have access to Rosie Cruze's Health and Group Benefit Plan(s) and/or Retirement Plan effective 10-30-2007, for the purposes stated therein." (Compl. ¶ 10; Feb. 11, 2020 Correspondence.) At all relevant times, the pension payments from the Plan were deposited into a bank account at Brunswick Bank & Trust Company ("Brunswick Bank"), account number 200604131 (the "Brunswick Account"). (Compl. ¶ 11.) After the issuance of the Letters of Guardianship, Defendant had "complete control over the [Brunswick A]ccount." (*Id.* ¶ 12.)

Cruze passed away on or about July 4, 2013. (*Id.* ¶ 2.) Defendant did not inform Verizon or the Plan of Cruze's death. (*Id.* ¶ 15.) "Under the terms of the [Plan], upon her death Ms. Cruze's

2

pension ended and no further benefits were payable to her from the [Plan]." (*Id.* ¶ 14.) Because Verizon was not informed of Cruze's death, it continued to deposit unmerited pension payments into the Brunswick Account through March 1, 2018. (*Id.* ¶ 16.) Verizon learned of Cruze's death from Brunswick Bank on or about March 15, 2018 and ceased making payments. (*Id.* ¶¶ 13, 15–16.) In total, "there has been an overpayment from the [Plan] in the principal amount of $45,282.24." (*Id.* ¶ 16.) Following Cruze's death, Defendant made "withdrawals of significant amounts" from the Brunswick Account. (*Id.* ¶ 17.) Verizon contends that "some if not all of the funds withdrawn from the [A]ccount by [Defendant] subsequent to the death of Ms. Cruze either remain in [Defendant's] possession or may be traced to other assets in [Defendant's] possession." (*Id.*)

On March 27, 2018, Verizon sent correspondence (the "March 27, 2018 Correspondence"), on behalf of the Plan, to Defendant advising her of the overpayment and stating that the overpaid funds had to be repaid to the Plan. (*Id.* ¶ 18; *see also* Mar. 27, 2018 Correspondence, Ex. C to Compl., ECF No. 1-3.) On April 13, 2018, Verizon sent correspondence (the "April 13, 2018 Correspondence"), on behalf of the Plan, "again request[ing] that [Defendant] contact [Verizon] to discuss the [Plan's] recovery of the overpayment." (*Id.* ¶ 19; *see also* Apr. 13, 2018 Correspondence, Ex. D to Compl., ECF No. 1-4.) To date, Defendant has not returned the overpaid funds. (*Id.* ¶ 20.)

On September 25, 2018, Plaintiff filed a two-count Complaint: (1) Count One, seeking equitable restitution in the form of the recovery of overpaid funds under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), and the imposition of a constructive trust on the Brunswick Account (*Id.* ¶¶ 21–24); and (2) Count Two, alleging common law fraud and conversion (*id.* ¶¶ 25–28). On November 20, 2018, Plaintiff e-filed an affidavit of service for the Complaint and

summons, dated November 5, 2018. (ECF No. 6.)[2] After being served with the summons and Complaint, Defendant contacted counsel for Plaintiff to discuss the matter. (Certification of Sarah Fehm Stewart ("Stewart Cert.") ¶ 10, ECF No. 13-1.) During one such phone call, Defendant proposed a repayment plan, which counsel relayed to Plaintiff. (*Id.* ¶¶ 11–13.) Defendant, however, failed to return subsequent phone calls and voicemails from Plaintiff's counsel. (*Id.* ¶ 15.) On March 12, 2019, Plaintiff's counsel sent Defendant correspondence (the "March 12, 2019 Correspondence") stating that if Defendant failed to contact Plaintiff's counsel within 5 days, Plaintiff would move for an entry of default. (*Id.* ¶ 16; *see also* Mar. 12, 2019 Correspondence *6[3], Ex. 1 to Stewart Cert.) On March 13, 2019, Plaintiff again e-filed an affidavit of service for the Complaint and summons. (ECF No. 9.)

On March 18, 2019, Plaintiff requested the Clerk of the Court make an entry of default against Defendant. (ECF No. 10.) On March 19, 2019, the Clerk entered default against Defendant. On November 4, 2019, Plaintiff filed the instant Motion. (ECF No. 13.) Plaintiff's Motion seeks an award of $11,446.00 in equitable restitution.[4] (Pl.'s Moving Br. 1, ECF No. 13-3.)

---

[2] The Court notes that there are three separate docket entries relating to the service of a summons and Complaint on Defendant. (*See* ECF Nos. 6, 8, 9.) Docket entries 6 and 9 indicate service on November 5, 2019, at 3:20 p.m. (*See* ECF Nos. 6, 9.) Docket entry number 8 indicates service on October 5, 2019, at 3:20 p.m. (*See* ECF No. 8.) In Plaintiff's request for an entry of default, docket entry number 9 is cited. The Court, therefore, understands the October 5, 2019 affidavit of service to contain a typographical error.

[3] Page numbers preceded by an asterisk reference the page number listed in the ECF header.

[4] At an unspecified time, subsequent to Rosie Cruze's death, Brunswick Bank froze the Brunswick Account. (Stewart Cert. ¶ 22.) The figure of $11,446.00 represents the balance of funds remaining in the Brunswick Account. (*Id.* ¶ 24.)

4

## II.    LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure allows a court "to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing *Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). "A consequence of the entry of a default judgment is that the factual allegations of the complaint . . . will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (internal quotation marks omitted); *see also Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013) ("[D]efendants are deemed to have admitted the factual allegations of the [c]omplaint by virtue of their default, except those factual allegations related to the amount of damages."). Whether to grant default judgment is left "primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).

Prior to entering default judgment, the Court must determine whether it has subject matter jurisdiction over the claims asserted and personal jurisdiction over the parties. *Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017) (citing *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010)). "A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. Effective service of process is therefore a prerequisite to proceeding further in a case." *Trs. of United Food & Commercial Workers Union Local 312 Benefit Fund v. Meg Tackle Imports, Inc.*, No. 18-11715, 2019 WL 5064196, at *1 (D.N.J. Oct. 9, 2019) (quoting *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir. 1991)). Federal Rule of Civil Procedure 4(e)(2) provides that an individual may be properly served by "leaving a copy of [the summons and the complaint] at the individual's dwelling or usual place of abode with someone of suitable

age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B). Further, the Court must determine "whether the moving party's complaint establishes a legitimate cause of action." *La. Counseling & Family Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 365 (D.N.J. 2008) (citation omitted).

If these initial requirements are met, then the Court must consider three factors to determine whether entry of a default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied[;] (2) whether the defendant appears to have a litigable defense[;] and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

## III. DISCUSSION

### A. Jurisdiction

As a threshold matter, the Court must determine whether it has subject matter jurisdiction over the claims asserted and personal jurisdiction over the parties. *See Mark IV Transp. & Logistics*, 705 Fed. App'x at 108 (citation omitted).

Pursuant to 29 U.S.C. § 1132(e)(1), a federal district court has exclusive jurisdiction over matters arising under 29 U.S.C. § 1132(a)(3). Here, because this matter is brought pursuant to 29 U.S.C. § 1132(a)(3), the Court has subject matter jurisdiction. As to personal jurisdiction, "[a] court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant." *Lampe*, 952 F.2d at 700–01. Plaintiff filed an affidavit of service for the Complaint and summons. (ECF No. 9.) The Court, therefore, has personal jurisdiction over Defendant.

6

## B.     <u>Legitimate Cause of Action</u>

After determining jurisdiction is proper, the Court must evaluate "whether the moving party's complaint establishes a legitimate cause of action." *La. Counseling & Family Servs., Inc.*, 543 F. Supp. 2d at 365.

Pursuant to 29 U.S.C. § 1132(a)(3)(B), the fiduciary of a plan may bring a civil action to obtain "appropriate equitable relief . . . to enforce . . . the terms of the plan." The Supreme Court has held that fiduciaries and plan administrators may enforce reimbursement provisions by filing suit under section 502(a)(3) of ERISA. *See U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 91 (2013) (citing *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362 (2006)). A "feature of equitable restitution [is] that it [seeks] to impose a constructive trust or equitable lien on 'particular funds or property in the defendant's possession.'" *Sereboff*, 547 U.S. at 362 (quoting *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)).

Here, taking the allegations of the Complaint as true, the Court finds Plaintiff has established a legitimate cause of action under section 503(a)(3) of ERISA. Plaintiff is the administrator and fiduciary of the Plan and, as such, is empowered to enforce its terms. (Compl. ¶ 1.) Under the terms of the Plan, pension payments cease upon the death of the beneficiary. (*Id.* ¶ 14.) Because Defendant failed to notify Plaintiff or Verizon of Rosie Cruze's death, Verizon overpaid pension benefits in the amount of $45,282.24. (*Id.* ¶¶ 15–16.) The overpayments were deposited into the Brunswick Account and are specifically identifiable. (*Id.* ¶¶ 11.) Defendant maintains complete control over the Brunswick Account and has failed to return the overpaid funds. (*Id.* ¶¶ 12, 20.)

### C.     *Chamberlain* Factors

Because Plaintiff has established a legitimate cause of action, the Court must next consider the three *Chamberlain* factors to determine whether entry of a default judgment is appropriate, specifically: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164 (citing *$55,518.05 in U.S. Currency*, 728 F.2d at 195). The Court addresses each factor in turn.

"As to the first factor, '[w]hen a defendant fails to respond to a plaintiff's claims, the plaintiff will be prejudiced absent a default judgment because [the] plaintiff will be left with no other means to vindicate [its] claims.'" *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, No. 15-5343, 2017 WL 11491955, at *3 (D.N.J. Nov. 28, 2017) (quoting *United States v. DiPiazza*, No. 16-518, 2016 WL 7015625, at *2 (D.N.J. Nov. 30, 2016)). Here, Defendant has failed to participate. The Court, therefore, finds that this factor weighs in favor of granting default judgement.

As to the second factor, "[a] . . . defense[ ] will be deemed meritorious when the allegations of the pleadings, if established at trial, would . . . constitute a complete defense." *Tryg Ins.*, 2017 WL 11491955, at *3 (quoting *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 869–70 (3d Cir. 1984). When a defendant fails to appear, a court may find it has "failed to raise any defenses for the Court's consideration." *Id.*; *see also United States v. Vo*, No. 15-6327, 2016 WL 475313, at *3 (D.N.J. Feb. 8, 2016) (noting that "the Court cannot consider [d]efendant's defenses if any exist because [d]efendant failed to respond to this action"); *Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) (stating that "because [defendant] has not answered or otherwise appeared in this action, the Court was unable to ascertain whether she has any litigable defenses"). Here, because Defendant has failed to appear, the Court is unable

8

to consider any defenses it may have raised. The Court, accordingly, finds that this factor weighs in favor of granting default judgment.

Finally, the Court considers "whether Defendant['s] delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164. "[C]ulpable conduct means actions taken willfully or in bad faith." *DiPiazza*, 2016 WL 7015625, at *2 (quoting *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-24 (3d Cir. 1983)). A failure to respond "at the very least . . . reflects willful conduct." *Id.*; *see also Tryg Ins.*, 2017 WL 11491955, at *3 (holding that "[w]hile [d]efendant's complete inaction may not necessarily reflect bad faith, at the very least it reflects willful conduct." (internal quotation omitted)). Here, Defendant was properly served and failed to respond. The Court, therefore, finds that this failure is due to its willful conduct. The Court, accordingly, finds the third factor weighs in favor of granting default judgment.

### D. Damages

Having found that Plaintiff established a legitimate cause of action for a violation of ERISA, and having found the *Chamberlain* factors weigh in favor of granting default judgment, the Court turns to the issue of damages.

"The district court has considerable latitude in determining the amount of damages. The court is not required to conduct a hearing as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." *Cornwell Quality Tools Co. v. Blanco*, No. 16-5086, 2018 WL 2441750, at *2 (D.N.J. May 30, 2018) (internal quotation omitted). "It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Id.* (quoting *Pope v. United States*, 323 U.S. 1, 12 (1944)). "When the damages are for a sum certain, which is established by competent

affidavit, default judgment may be entered without further proceedings." *United States v. Pinsky*, No. 10-2280, 2011 WL 1326031, at *2 (D.N.J. Mar. 31, 2011) (citing Fed. R. Civ. P. 55(b)(1)).

Here, in addition to the allegations contained in the Complaint, Plaintiff has submitted the Stewart Certification and the Declaration of Daniel Fleming (ECF No. 13-2), in support of its request for an award of equitable restitution in the amount of $11,446.00. The Court finds these proofs to be sufficient and, accordingly, awards Plaintiff $11,446.00 in equitable restitution, to be paid from the Brunswick Account. *See, e.g., Alcatel-Lucent USA Inc. v. Borlabi*, No. 13-4543, 2016 WL 3406227, at *4 (D.N.J. June 16, 2016) (awarding plaintiff default judgment in the amount of $207,645.17, which represented "the amount of overpaid benefits that [d]efendant still had in her money market account").

## IV. CONCLUSION

For the reasons set forth above, the Court awards Plaintiff $11,446.00 in equitable restitution. The Court will enter an Order consistent with this Memorandum Opinion.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

Dated: June 15, 2020